**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0642**

In the Matter of the Wetland Conservation Act appeal filed by
David Stock of a Restoration Order located in part of Section 4, T.131N, R.43W,
Aastad Township, Otter Tail County.

**Filed March 11, 2024
Affirmed
Cochran, Judge**

Minnesota Board of Water and Soil Resources

Gary R. Leistico, Jayne E. Esch, Leistico & Esch, PLLC, Clear Lake, Minnesota (for relators David Stock and Stock Farms LLLP)

Keith Ellison, Attorney General, Brian S. Carter, Oliver J. Larson, Assistant Attorneys General, St. Paul, Minnesota (for respondent Minnesota Board of Water and Soil Resources)

Considered and decided by Cochran, Presiding Judge; Slieter, Judge; and Halbrooks, Judge.[*]

**SYLLABUS**

Minnesota Statutes section 103G.2374 (2022) authorizes a local government unit to electronically transmit notices of decisions pursuant to Minnesota Statutes sections 103G.2212-.2372 (2022), unless the recipient has provided a mailing address and specified that mailing is preferred. Section 103G.2374 supersedes Minnesota Rule 8420.0255, subpart 5 (2021), to the extent that the rule requires a local government unit to physically mail all notices of such decisions to affected parties.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**COCHRAN**, Judge

In this certiorari appeal, relators David Stock and Stock Farms LLLP challenge a decision by respondent Minnesota Board of Water and Soil Resources (BWSR) denying their administrative appeals from two related wetland-restoration orders issued under the Minnesota Wetland Conservation Act (WCA), Minnesota Statutes sections 103G.221-.2375 (2022). The BWSR denied relators' administrative appeals after a local government unit (LGU) rejected relators' after-the-fact applications for either an exemption or "no-loss" determination under the WCA that would have eliminated the need for relators to restore the wetlands. Relators argue that the BWSR "improperly denied" their appeals because the BWSR relied on the LGU's notices of decision on the after-the-fact applications, which relators contend were impermissibly emailed to relators by the LGU rather than sent by mail. Because Minnesota Statutes section 103G.2374 authorized the LGU to transmit the notices of decision by email, we affirm the BWSR's denial of relators' administrative appeals of the wetland-restoration orders.

## FACTS

On October 31, 2022, staff from the Otter Tail County Department of Land and Resource Management (county), West Otter Tail Soil and Water Conservation District, and Minnesota Department of Natural Resources (DNR) met on relators' property in Aastad Township "to investigate a complaint about wetland areas being filled." The staff determined that relators "had stripped wetland soils, placed down aggregate, then put

wetland soils back on top to cover aggregate fill," impacting an area of around 27,770 square feet along the west side of the Mustinka River floodplain.

Stock told the staff that he filled the west side of the floodplain "to get the ground elevation equal to that of the [e]ast side." Stock's comment led the staff to suspect that the east side had also been filled, causing it to be "higher than the natural grade of the [w]est side." After the staff performed a soil boring, they determined that materials from "unpermitted channel cleaning were deposited next to the channel and spread out resulting in approximately 34,125 [square feet] of wetland area being filled" on the east side.

The staff determined that the respective fill amounts on both sides of the floodplain "far exceed[ed] any exemptions" under the WCA. Additionally, the staff noted that the county, as the relevant LGU, had not received an application from relators for permission to fill the wetlands.

After concluding the investigation, the staff issued two restoration orders—one for the west side on November 16, 2022, and one for the east side on December 1, 2022. Both orders required relators to either remove the fill by a specified date or submit an after-the-fact WCA application to the LGU. The restoration orders also informed relators that they could administratively appeal the orders to the BWSR by filing a written request within 30 days of receipt.

On December 14, relators appealed the west-side restoration order to the BWSR and concurrently applied to the LGU for an after-the-fact WCA exemption or no-loss determination regarding the west-side filling. On December 26, relators applied to the LGU for an after-the-fact WCA exemption or no-loss determination regarding the east-side

3

filling. And, on December 27, relators appealed the east-side restoration order to the BWSR.

In support of the after-the-fact applications, relators asserted that their activity was exempt from the WCA for several reasons. First, relators claimed that they were merely restoring the original grade of the property after removing a beaver dam. Relators asserted that "[t]he DNR and/or other government agencies were aware" of the activity and did not object. Second, relators disputed whether the area in question constituted a wetland. In the alternative, they argued that their activity met the criteria for "no-loss" under the WCA because it "did not result in the alteration of the original cross-section of the wetland." Finally, relators challenged the scope of the restoration orders, arguing that the square footage identified in the restoration orders was "excessive." While the LGU considered the after-the-fact applications, the BWSR held relators' appeals in abeyance and stayed the restoration orders.

On February 1, 2023—49 days after relators submitted their first after-the-fact application—the LGU notified relators and their attorney by email of its denials of relators' after-the-fact applications. The email attached a formal notice of decision for each application. Each notice of decision concluded that relators' applications did "not meet the criteria for an exemption or no-loss" determination and therefore "must be denied." Each notice of decision also included findings supporting the denial and instructed relators that they could administratively appeal the denial by submitting a written request to the BWSR within 30 days of receiving the notice. It is undisputed that relators did not appeal either denial to the BWSR.

After that administrative-appeal period expired, the BWSR reinstated the pending restoration-order appeals. On March 31, the BWSR issued two orders denying relators' appeals of the restoration orders. In each of the orders, the BWSR made similar findings and legal conclusions. The BWSR found that "photographic evidence document[ed] that alterations occurred on the property consistent with those described in the [r]estoration [o]rder." The BWSR also found that "no additional supporting information has been submitted to dispute the [r]estoration [o]rder findings." And the BWSR found that the LGU denied relators' after-the-fact applications for a WCA exemption or no-loss determination, relators did not appeal the denials, and, therefore, the denials were final. The BWSR also noted that, "if an application is denied, the landowner or responsible party must restore the wetland as specified in the order." *See* Minn. R. 8420.0900, subp. 4(B) (2021). Finally, the BWSR stated that the WCA "prohibit[s] the impact of wetlands in this matter without an approved replacement plan, exemption[,] or no-loss determination." As a result, the BWSR affirmed both the west-side and east-side restoration orders.

Relators appeal by writ of certiorari the BWSR's denial of their restoration-order appeals.

**ISSUE**

Did the BWSR err in denying relators' administrative appeals of the wetland-restoration orders?

**ANALYSIS**

The WCA "was adopted by the legislature in 1991 for the purpose of preserving and restoring Minnesota wetlands." *In re Hibbing Taconite Mine & Stockpile Progression*, 888 N.W.2d 336, 340 (Minn. App. 2016). The WCA generally requires that "[w]etlands must not be drained or filled, wholly or partially, unless replaced by actions that provide at least equal public value under a replacement plan." Minn. Stat. § 103G.222, subd. 1(a). The legislature has provided certain exemptions from this general requirement. *See* Minn. Stat. § 103G.2241 (listing circumstances exempt from the wetland-replacement-plan requirement).

The WCA is administered by the BWSR in conjunction with LGUs, including soil and water conservation districts and counties. *See* Minn. Stat. § 103G.2242; Minn. R. 8420.0100, subp. 3, .0111, subp. 38(A) (2021); *see also Hibbing Taconite Mine*, 888 N.W.2d at 340. Enforcement of the WCA is provided by the DNR commissioner, conservation officers, and other peace officers. Minn. Stat. § 103G.2372, subd. 1(a); Minn. R. 8420.0900, subp. 1 (2021).

The BWSR has promulgated rules implementing the WCA. *See* Minn. R. 8420.0100-.0935 (2021); *see also* Minn. Stat. §§ 103B.101, subd. 7 (authorizing the BWSR to adopt rules necessary to execute its duties), 103G.2242, subd. 1(a) (requiring the BWSR to adopt rules governing approval of wetland-replacement plans) (2022). Under

6

the rules, enforcement authorities "must issue a restoration order" to a landowner or responsible party when an already-complete wetland impact is discovered. Minn. R. 8420.0900, subp. 3(A)(1). "[The] restoration order must specify [the] dates by which the landowner or responsible party must" either comply with the restoration order or "submit a complete replacement plan, exemption, or no-loss application to the [LGU]." *Id.*, subp. 4(A). "'No-loss' means no permanent loss of, or impact to, wetlands from an activity according to the criteria" set forth in the rules. Minn. R. 8420.0415.

The LGU must issue a decision on an after-the-fact application within 60 days. *See* Minn. R. 8420.0255, subp. 4 (incorporating Minnesota Statutes section 15.99 (2022), which "generally requires a decision in 60 days"); *see also* Minn. Stat. §§ 103G.2242, subd. 4 (requiring the LGU to issue decisions on exemption and no-loss-determination applications in compliance with section 15.99), 15.99, subd. 2(a). If the application "is denied, the landowner or responsible party must restore the wetland as specified in the order." Minn. R. 8420.0900, subp. 4(B). Landowners and responsible parties also have the option to administratively appeal a restoration order to the BWSR within 30 days of receipt of the order. Minn. Stat. § 103G.2242, subd. 9a. The BWSR must render a decision on an appeal within 60 days of receipt. *Id.*

A decision by the BWSR denying an administrative appeal of a restoration order is "the decision of an agency in a contested case for purposes of judicial review under [Minnesota Statutes sections 14.63-.69 (2022)]." *Id.* We may affirm such a decision or remand for further proceedings. Minn. Stat. § 14.69. We may also reverse or modify the decision, but only "if the substantial rights of the petitioners may have been prejudiced."

*Id.* Our review of a contested-case decision is limited to whether the decision is: (1) unconstitutional; (2) in excess of the agency's statutory authority or jurisdiction; (3) the result of unlawful procedure; (4) affected by legal error; (5) unsupported by substantial evidence; or (6) arbitrary or capricious. *Id.*

Relators assert that the BWSR "improperly denied" their administrative appeals of the wetland-restoration orders because the BWSR's decision relied on the fact that relators did not appeal the LGU's denials of the after-the-fact applications, making the denials final for purposes of the BWSR's review.[1] Relators argue that their failure to appeal the denials is excused because of procedural shortcomings by the LGU in its transmission of the denial of their after-the-fact applications. Specifically, relators contend that Minnesota Rule 8420.0255, subpart 5, required the LGU to mail, instead of email, notice of the LGU's decisions to relators. The BWSR responds that Minnesota Statutes section 103G.2374 supersedes that rule's mail requirement and permits electronic transmission of the application decisions. Consequently, the BWSR contends that it properly considered the LGU's denials to be final when it decided relators' administrative appeals from the restoration orders.

To resolve this legal dispute, we must determine the proper interpretation of the statute and administrative rule at issue. "The proper interpretation of statutes and rules is a question of law that we review de novo." *Berglund v. Comm'r of Revenue*,

---

[1] Relators' argument is only that the BWSR's decision is affected by unlawful procedure or legal error. Relators do not challenge the substance of the BWSR's denial of their administrative appeals of the wetland-restoration orders.

877 N.W.2d 780, 783 (Minn. 2016); *see also In re SIRS Appeal by Nobility Home Health Care, Inc.*, 999 N.W.2d. 843, 855 (Minn. 2024). The rule cited by relators provides that an LGU's "decision must be mailed to the landowner within ten business days of the decision." Minn. R. 8420.0255, subp. 5. This rule, which concerns LGU application procedures, applies to denials of an after-the-fact application for an exemption or no-loss determination under the WCA. *See* Minn. R. 8420.0255 (providing "[LGU] application and decision procedures"), .0111, subp. 8 (defining "[a]pplication" as "a formal request for a decision by a[n] [LGU]," including for an exemption or no-loss determination). Relators argue that the LGU violated rule 8420.0255 because the LGU emailed the notices of denial of relators' applications instead of sending the notices by U.S. Mail. According to relators, it was therefore legally "improper" for the BWSR to rely on the LGU's denial of relators' after-the-fact applications in its orders denying relators' appeals of the restoration orders.

The BWSR counters that section 103G.2374, which is part of the WCA, permitted the LGU to email the application-denial decisions to relators. Section 103G.2374 provides: "For purposes of sections 103G.2212 to 103G.2372, notices and other documents may be sent by electronic transmission unless the recipient has provided a mailing address and specified that mailing is preferred." Minn. Stat. § 103G.2374. The BWSR argues that the statute permits an LGU to transmit a notice of denial of a WCA application via email, except in limited circumstances not applicable here, and supersedes rule 8420.0255, subpart 5, to the extent that the rule requires physical mailing of all such notices. We agree with the BWSR.

9

By its plain language, section 103G.2374 authorizes "electronic transmission" of "notices and other documents" for purposes of sections 103G.2212 to 103G.2372 "unless the recipient has provided a mailing address and specified that mailing is preferred." Minn. Stat. § 103G.2374. The range of statutes covered by section 103G.2374 includes section 103G.2242, subdivision 4, which governs decisions by LGUs regarding applications under the WCA for an exemption or no-loss determination. *See* Minn. Stat. § 103G.2242, subd. 4 (requiring an LGU to "act on all . . . exemption or no-loss determination requests in compliance with" Minnesota Statutes section 15.99); *see also* Minn. Stat. § 15.99, subd. 2(a) (requiring LGUs to approve or deny applications within 60 days and to provide written reasons for any denials). Thus, under the plain language of section 103G.2374, an LGU may send the notice of a decision denying an application for an exemption or no-loss determination under the WCA by "electronic transmission unless the recipient has provided a mailing address and specified that mailing is preferred." *See* Minn. Stat. §§ 103G.2242, subd. 4, .2374. For purposes of Minnesota Statutes chapter 103G, "[e]lectronic transmission specifically means *electronic mail*, unless other means of electronic transmission are mutually agreed to by the sender and recipient." Minn. Stat. § 103G.005, subd. 9b (2022) (emphasis added). We therefore hold that section 103G.2374 authorizes an LGU to send by email the notice of a decision denying an application for a WCA exemption or no-loss determination, unless the recipient has provided a mailing address and specified that mailing is preferred.

Relators do not assert that they specified that mailing was preferred, nor is there any evidence in the record to support such an assertion. Thus, the LGU was authorized by

10

section 103G.2374 to send the notices of its decisions on the after-the-fact applications to relators by email.

Relators are correct that rule 8420.0255, subpart 5, appears to require an LGU to mail its decisions on an application to an affected landowner. And, typically, "administrative rules carry the force of law." *Berglund*, 877 N.W.2d at 784. But administrative rules "must be construed consistently with the statutory scheme they implement," and where "the rule conflicts with a statute, the statute controls." *Id.* at 784-85; *see also Special Sch. Dist. No. 1 v. Dunham*, 498 N.W.2d 441, 445 (Minn. 1993) ("It is elemental that when an administrative rule conflicts with the plain meaning of a statute, the statute controls."). "[W]hen [a] rule adds a requirement that is different from the requirements expressed in [a] statute," the rule conflicts with the statute. *Minn. Voters All. v. Off. of Minn. Sec'y of State*, 990 N.W.2d 710, 720 (Minn. 2023).

For instance, in *Berglund*, the supreme court determined that an administrative rule included a requirement not found in the controlling statute and, therefore, conflicted with the statute. 877 N.W.2d at 785. There, a tax rule provided that "the filing date of a commissioner filed [tax] return" was the date the return was signed by the commissioner of revenue. *Id.* at 783 (quotation omitted). Berglund argued that, because the commissioner had not signed the returns that the commissioner filed on behalf of Berglund, the returns had no "filing date" or date of assessment under the rule and therefore the taxes could not be assessed against him. *Id.* at 782. But a statute, Minnesota Statutes section 270C.62 (2014), defined the "date of assessment" as the date "of the return made by the [c]ommissioner" and did not mention the commissioner's signature. *Id.* at 783

11

(quoting Minn. Stat. § 270C.62). The supreme court determined that the rule's signature requirement conflicted with the plain language of the statute and therefore that the statute controlled. *Id.* at 785.

Here, the rule that relators rely on includes a requirement that does not exist in the statute—it requires an LGU to physically mail all notices of decisions to affected landowners, whereas the statute permits electronic transmission of such notices. *Compare* Minn. R. 8420.0255, subp. 5, *with* Minn. Stat. § 103G.2374. An LGU cannot be permitted to email notices while also being required to exclusively physically mail them. Thus, section 103G.2374 and rule 8420.0255 conflict, and the statute controls.[2] *Berglund*, 877 N.W.2d at 784-85. Accordingly, we conclude that the LGU was not required to physically mail the after-the-fact application denials to relators.[3]

We are not persuaded otherwise by relators' argument that it is "fundamentally unfair" for the BWSR to argue that section 103G.2374 applies given that rule 8420.0255

---

[2] Relators argue that we should read the rule and statute here in a manner that gives effect to both, relying on Minnesota Statutes section 645.26, subdivision 1 (2022). Under section 645.26, subdivision 1, when a general provision in a law conflicts with a specific provision in the same or another law, the "two shall be construed, if possible, so that effect may be given to both." Minn. Stat. § 645.26, subd. 1; *see also* Minn. Stat. § 645.001 (2022) (providing that rules of statutory construction in chapter 645 "govern all rules"). Given our conclusion that the rule and statute here cannot be construed to give effect to both, relators' reliance on section 645.26, subdivision 1, is unavailing.

[3] We are further convinced that the statute controls because it was enacted after the rule was promulgated. Rule 8420.0255 was promulgated in 2009. 33 Minn. Reg. 1641, 1656-57 (Mar. 30, 2009) (proposing rule 8420.0255); 34 Minn. Reg. 145, 150 (Aug. 3, 2009) (adopting the proposed rule, with modifications). Chapter 103G was amended in 2011 to add provisions concerning electronic transmission, including section 103G.2374. 2011 Minn. Laws ch. 107, §§ 64, at 477; 75, at 486. In other words, "intervening legislative action has made the rule's [mail] requirement obsolete." *Berglund*, 877 N.W.2d at 785.

is still in place. In *Berglund*, the supreme court recognized that a tax rule had coexisted with a contradictory statute "for many years." 877 N.W.2d at 785. Yet, the supreme court held that the rule was nevertheless invalid because of the conflict. *Id.* Similarly, we conclude that rule 8420.0255 is invalid to the extent that it conflicts with section 103G.2374. *See id.* Moreover, relators do not argue that the LGU's electronic transmission of the denials violated their due-process rights in any manner. *See* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. Accordingly, we discern no reason to reverse based on relators' argument that the BWSR's reliance on section 103G.2374 is "fundamentally unfair." *See* Minn. Stat. § 14.69 (enumerating grounds for reversal of an administrative decision).

Because the statute and rule at issue in this case conflict, we hold that the statute prevails. We therefore reject relators' argument that the BWSR improperly denied their restoration-order appeals based on their failure to appeal the LGU's after-the-fact application denials simply because the LGU sent the denials to relators by email.[4]

---

[4] Relators make a related argument requesting that we "find [relators'] WCA applications for exemption and no-loss were approved by operation of law under [section 15.99]" because relators did not timely receive "proper notice" of the LGU's application-denial decisions. To the extent that relators seek a declaration that their applications were automatically approved under Minnesota Statutes section 15.99, we note that subject-matter jurisdiction over such claims generally lies with the district court. *See 500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 289 n.2 (Minn. 2013). And, to the extent that relators assign error on this ground to the BWSR decision that is the subject of this certiorari review, we conclude that the argument fails for the same reasons as relators' primary argument on appeal. We have determined that the LGU properly notified relators of the application denials by email. And relators do not dispute that the application-denial decisions were emailed to them within 60 days of the date that they submitted the applications, as required by section 15.99. *See* Minn. Stat. § 15.99, subd. 2(a). We

**DECISION**

Minnesota Statutes section 103G.2374 permits an LGU to email a decision on an after-the-fact WCA application to an applicant unless the applicant has provided a mailing address and specified that mailing is preferred. We conclude that section 103G.2374 supersedes the provision in Minnesota Rule 8420.0255, subpart 5, which requires an LGU to physically mail all such decisions. We therefore reject relators' argument that the BWSR improperly considered the LGU's denial of relators' after-the-fact WCA applications, which the LGU emailed to relators, when the BWSR denied relators' administrative appeals of the wetland-restoration orders. Because the BWSR did not err by considering the LGU's denial of the after-the-fact WCA applications, we affirm the BWSR's decision denying relators' administrative appeals.

**Affirmed.**

---

therefore discern no basis for concluding that relators' exemption and no-loss applications "were approved by operation of law."